UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
JOEL B. ROSEN
UNITED STATES MAGISTRATE JUDGE
FAX: (856)757-5355

MITCHELL H. COHEN COURTHOUSE
1 John F. Gerry Plaza, Room 2060
CAMDEN, NJ  08101 - 0887
PHONE: (856) 757-5446

September 15, 2005

Arsell Lewis, Jr., *Pro Se*
#121496
Atlantic County Justice Facility
5060 Atlantic Ave.
Mays Landing, NJ 08330

Tamara L. Rudow, Esquire
Office of the New Jersey Attorney General
Division of Law
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625-0112

**RE:**   *Lewis v. Brown, McFarland, Hoey, Green, Peckman,* and *Doe*
          Civil No. 04-6063 (FLW)


**LETTER OPINION AND ORDER**

Dear Litigant and Counsel:

**I. Introduction**

The court shall *sua sponte* reconsider its earlier order denying the plaintiff's motion for the appointment of counsel.  Presently before the court is the plaintiff's application for appointment of legal counsel pursuant to 28 U.S.C. § 1915(e)(1). The plaintiff initiated this action pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his civil rights during his incarceration at the Southwoods State Prison in Bridgeton, NJ.

After careful deliberation of the plaintiff's submissions and other documents and for the

reasons noted below, the plaintiff's motion for appointment of counsel shall be **GRANTED**.

II. Factual and Procedural History

Plaintiff Arsell Lewis is presently incarcerated at the Atlantic County Justice Facility, in Mays Landing, New Jersey.

Approximately two-and-a-half months prior to surgery, the plaintiff injured his left leg while playing handball. (Plaintiff's Complaint at Exhibit E-7.) He saw Dr. Stephen Hoey on July 3, 2002, who ordered surgery at St. Francis Medical Center to repair the plaintiff's torn Achilles tendon.(*Id.* at 19.)

On September 5, 2002, the plaintiff underwent surgery at St. Francis Medical Center in Trenton, New Jersey, for a torn left Achilles tendon. Dr. Mark J. Pressman was the operating physician and is not a party to this suit. Plaintiff failed to appear for post-operative treatment of his injury, despite being originally scheduled for follow-up visits both one-and-a-half weeks and six weeks following the initial operation. (*Id.* at 15.) Because of the extended delay, plaintiff developed an exposed "skin-slough" with an exposed Achilles tendon.[1] Such damage was noticed when the cast was removed on October 29, 2002.

The current action arises from the plaintiff's allegation that, instead of sending him to see Dr. Pressman on his scheduled appointment days, he was sent by the medical services provider for Southwood State Prison, Correctional Medical Services, Inc., to see Dr. Peckman. Despite plaintiff's complaints of pain, Dr. Peckman refused to remove the cast because he was not the operating physician. (*Id.* at 17.) The plaintiff now requires special boots and a brace. (*Id.* at 21.)

---

[1] According to *Taber's Cyclopedic Medical Dictionary*, a slough is dead matter or necrosed tissue separated from living tissue or an ulceration.

As a result of this allegedly improper medical care, plaintiff is seeking both physical and punitive damages for a total of three million dollars.

The plaintiff filed his complaint pursuant to 42 U.S.C. § 1983 alleging that his civil rights were violated. Specifically, he named Commissioner of the Department of Corrections Devon Brown; Kathryn McFarland, Administrator of the Southwood State Prison; John Doe A/K/A Abu Ahsan, M.D., of Correctional Medical Services, Inc.; Stephen Hoey, D.O., of Correctional Medical Services, Inc.; Nurse Fran Green of Correctional Medical Services, Inc.; and a Dr. Peckman, M.D., of Southwood State Prison, as violating his Eighth Amendment rights in regard to providing proper medical treatment for an incarcerated prisoner. The District Court granted *in forma pauperis* status to the plaintiff on March 24, 2005. On April 19, 2005, the plaintiff filed an application to appoint counsel pursuant to 28 U.S.C. § 1915(e)(1).

The plaintiff contends in his application for pro bono counsel that he will be unable to pursue pro se litigation because he does not understand the law well. (Plaintiff's Application for Pro Bono Counsel, 04/19/2005.) Additionally, he suggests that assistance of counsel could bring about a settlement rather than the burden of trial. (*Id.*)  The plaintiff has attempted to procure representation, however, he states that he has not received a response from any attorney he has contacted. (*Id.*) Thus far, the plaintiff has proceeded without assistance of counsel.

**III. Analysis**

    **A. Appointment of Counsel Under 28 U.S.C. §1915(e)**

The District Court, may, pursuant to §1915(e), request that an attorney represent an indigent plaintiff in a civil action. Section 1915 provides in relevant part:

    (1) The court *may* request an attorney to represent any person unable to afford

>    counsel.
>    (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>     (A) the allegation of poverty is untrue; or
>     (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e) (1996) (emphasis added). Unlike in criminal cases, there is no inherent constitutional right for an indigent litigant to receive the benefit of counsel in a civil proceeding. *Parham v. Johnson,* 126 F.3d 454, 457 (3d Cir. 1997); *see also Tabron v. Grace*, 6 F.3d 147 (3d. Cir. 1993). Counsel may be appointed at any point in the litigation or *sua sponte* by the court. *Tabron,* 6. F.3d at 156. However, in using this appointment power, the court must determine whether the claim has "some merit in fact and law" as a preliminary matter. *Id.* at 157. If the court determines that the claim does indeed have merit, the following factors are then considered:

>    (1) the plaintiff's ability to present his or her own case;
>    (2) the complexity of the legal issues;
>    (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
>    (4) the amount a case is likely to turn on credibility determinations;
>    (5) whether the case will require the testimony of expert witnesses;
>    (6) whether the plaintiff can attain and afford counsel on his own behalf.

*Id.* at 156-57. This list is neither exhaustive nor does any one factor determine the outcome. *Id.* at 157; *see also Parham*, 126 F.3d at 458; *Montgomery v. Pinchak,* 294 F.3d 492 (3d Cir. 2002). *Hamilton v. Leavy*, 117 F.3d 742, 749 (3d Cir. 1997); *Hetzel v. Swartz*, 917 F. Supp. 344, 346 (M.D. Pa. 1996); *Robinson v. Horn*, 921 F. Supp. 293, 295 (E.D. Pa. 1996); *Jones v. Hinton*, 153 F.R.D. 570, 571 (E.D. Pa. 1994). These factors ensure that courts will only appoint counsel in non-frivolous matters. *Parham*, 126 F.3d at 461. When the plaintiff's case has merit and most of


the above factors have been met, the court should consider the appointment of counsel. *Parham*, 126 F.3d at 461.

       1.     The Plaintiff's Ability to Present His Own Case

The first factor for consideration is the plaintiff's ability to present his own case. In making this determination, the court should consider the plaintiff's literacy, education, prior work experience, and prior litigation experience. *Tabron*, 6 F.3d at 156. A plaintiff's ability to understand English is also relevant to his ability to present his case. *Id.* Finally, if the plaintiff is incarcerated, the restraints placed upon him by virtue of his confinement should be considered in determining his ability to represent himself. *Id.* This includes the availability of typewriters, photocopiers, telephones and computers. *Id.*

       2.     The Complexity of The Legal Issues

The second factor for consideration is the complexity of the legal issues presented. In making this determination, the court is more inclined to appoint counsel when the legal issues are complex. *Id.* Where the law is not clear, it will best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis. *Id.* However, comprehension alone does not equal the ability to translate understanding into presentation. *Parham*, 126 F.3d at 459. Although the ultimate issue may be comprehensible, the court must appreciate the complexity of the discovery involved. *Id.*

       3.     The Degree to Which Factual Investigation Will Be Necessary and the Ability of the Plaintiff to Pursue Such Investigation

The third factor for consideration is the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation. In making this

determination, the court may consider the extent to which prisoners and others suffering confinement face problems in pursuing their claims. *Tabron*, 6 F.3d at 156. Further, the court should be aware of an indigent plaintiff's possible difficulties understanding complex discovery rules. *Parham*, 126 F.3d at 460. Thus, where the claims are likely to require extensive discovery and compliance with complex discovery rules, appointment of counsel may be warranted. *Tabron*, 6 F.3d at 156.

    4.    <u>The Amount a Case is Likely to Turn on Credibility Determinations</u>

The fourth factor for consideration is whether a case is likely to turn on credibility determinations. Though many cases turn on credibility determinations, the court should focus on whether the case is largely based on the word of one side against the word of the other side. *Parham*, 126 F.3d at 460.

    5.    <u>Whether the Case Will Require the Testimony of Expert Witnesses</u>

The fifth factor for consideration is the extent expert testimony may be required. Appointed counsel may be warranted where the case will require testimony from expert witnesses. *Tabron*, 6 F.3d at 156.

    6.    <u>Whether the Plaintiff Can Attain and Afford Counsel on His Own Behalf</u>

The sixth and final factor for consideration is plaintiff's financial ability to attain and afford counsel on his own behalf. *Parham*, 126 F.3d at 461.

**B. The Merit of Plaintiff's Claims**

While it is not this court's function in the context of a motion for appointment of counsel to reach the merits of plaintiff's claim, *Tabron* requires that this court consider whether the plaintiff's claim has "some merit in fact and law" and is not "frivolous or malicious." *Tabron*, 6

F.3d at 155; 28 U.S.C. § 1915(e)(2).

Based on the record before this court, the plaintiff's claims appear to have threshold merit. The allegations of the plaintiff, if established at trial, would support his Eighth Amendment deliberate indifference claim.

Deliberate indifference occurs when there is unnecessary infliction of pain by a prison official. Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The Supreme Court held that finding a prison official liable for violating a prisoner's Eighth Amendment rights requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Further, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

According to Third Circuit precedent, an inmate alleging deliberate indifference to medial needs or in relation to the prisoner's conditions of confinement must demonstrate: 1) a serious medical need, and 2) acts or omissions by prison officials that indicate deliberate indifference to that need. Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

A torn tendon, such as that of the plaintiff's, is likely to satisfy the first portion of the deliberate indifference test. In the United States District Court of New Jersey, a broken bone was stated to be a serious medical need. Nock v. Taylor, No. 05-1020, 2005 WL 1206844 (D.N.J. May 20, 2005). It is likely that a torn Achilles tendon would be found to have similar seriousness. Further, the Third Circuit Court of Appeals found that where there is a denial or delay in treatment that "causes an inmate to suffer a life-long handicap or permanent loss, the medical

need is serious." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (1987). The plaintiff has continued to be treated for the complications from these events to the present day. (Plaintiff's Complaint at Exhibits 1-7; Defendant Brown's Letter Brief at 2.)

The second part of the deliberate indifference test requires a showing that the acts or omissions by prison officials show a deliberate indifference toward the plaintiff's medical need. Natale, 318 F.3d at 582 (quoting Rouse, 182 F.3d at 197). The Third Circuit Court of Appeals has found that deliberate indifference occurs in situations where "necessary medical treatment is delayed for non-medical reasons." Natale, 318 F.3d at 582. In the present case, the plaintiff was seen by Dr. Peckman on October 9, 2002, however, Dr. Peckman refused to remove the cast on the basis that he was not the operating doctor, and the plaintiff's appointment was rescheduled. (Plaintiff's Complaint at 17.) It was an additional twenty days before the plaintiff was taken back to St. Francis Medical Center for further proceedings. (*Id.* at 15.)

The alleged delay in treatment appears to have caused the plaintiff harm, and thus has threshold merit in both fact and law to proceed. Nor does the claim appear to be frivolous or meritless.

The court is mindful of the defendants' defense denying that the events took place. However, at this early stage in the proceedings and without any supporting evidence, the court cannot accept the defendants' assertions over those of the plaintiff.

### C. Litigation Management Factors

This court must consider the litigation management factors to determine whether this claim warrants appointment of counsel. *See Parham,* 126 F.3d at 457. That is, this court must

-8-

consider whether the plaintiff is incapable of presenting his own case. In making this determination, as discussed supra, this court must take into consideration the complexity of the case, related matters of proof, presentation of testimony, and the difficulties of discovery, including those related to the plaintiff's incarceration.

The plaintiff has argued that he will be unable to present his own case due to his lack of legal experience. However, Mr. Lewis has demonstrated that he is more than able to present his own case: his pleadings are well written and articulate and clearly indicate the legal issues involved in his case. Also, the plaintiff has displayed an ability to advocate for himself as his criminal complaint illustrates. All of these factors indicate the plaintiff's ability to pursue his own case.  Although the ability of the plaintiff to properly bring his claim may be hindered by his limited knowledge of the law and access to legal materials, this is an unfortunate situation faced by many indigent pro se litigants. This alone does not warrant appointment of counsel.  The plaintiff has proceeded thus far appropriately and in accordance with the rules. He lodged a civil complaint against the defendants while in prison and was granted *in forma pauperis* status without the use of a lawyer.

The plaintiff's articulate filings in this matter, as well as the allegations in the complaint, do not lead this court to conclude that the plaintiff is incapable of presenting his own case. However, as this case involves a medical question, the legal issues are of greater complexity and expert testimony is likely necessary.  Consequently, it would be in the interest of the administration of justice and efficiency of court resources to grant the plaintiff's application for *pro bono* counsel.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the plaintiff's motion for the appointment of counsel is hereby **GRANTED**.

The attached order shall be entered.

Very truly yours,

/s Joel B. Rosen

JOEL B. ROSEN
UNITED STATES MAGISTRATE JUDGE

cc:     Honorable Freda L. Wolfson
        Jackie Gore, Courtroom Deputy

MJSTAR and Doc. No. 22

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| ARSELL LEWIS, Pro Se, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 04-6063(FLW) |
| | : | |
| DEVON BROWN, et al., | : | |
| | : | |
| Defendants. | : | |

## ORDER

This matter having come before the court upon the motion of Arsell Lewis, Plaintiff pro se, for appointment of counsel pursuant to 28 U.S.C. §1915(e); and the court having considered the submissions of the plaintiff; and the court having further considered the criteria and analysis set forth in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993) and Parham v. Johnson, 126 F.3d 454 (3d Cir. 1997); and for the reasons noted in the letter opinion entered on this date; and this matter having also come before the court upon the motion of Arsell Lewis, Plaintiff pro se, for various relief, including a request for a Marshal form AO 285 for service of summons; and the court having appointed counsel for the plaintiff; and counsel shall have the opportunity to review the complaint and the status of the case and may renew any of the requests for relief in the instant motion; and for good cause shown;

**IT IS** this 15th day of September 2005 hereby

**ORDERED** that the plaintiff's motion for appointment of counsel pursuant to 28 U.S.C. §1915(e) shall be **GRANTED**; and

IT IS FURTHER **ORDERED** that the plaintiff's motion for various relief (Doc. No. 22), pursuant to Fed. R. Civ. P. 16, shall be **DISMISSED WITHOUT PREJUDICE**.

/s Joel B. Rosen
JOEL B. ROSEN
United States Magistrate Judge